## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JERRY RAY FRANCIS, Jr.,**

    **Petitioner,**               **JUDGE FROST**
                                  **Magistrate Judge KING**
    **v.**                        **Case No. 2:04-cv-836**

**PAT HURLEY, Warden,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## I. FACTS

This case involves the following facts, as summarized by the Fifth District Court of Appeals:

> On May 14, 1997, the appellant/defendant, Jerry R. Francis, Jr., was indicted by the Guernsey County Grand Jury and charged with four counts of rape, each a violation of R.C. 2907.02, felonies of the first degree, and four counts of gross sexual imposition, each a violation of R.C. 2907.05, felonies of the third degree. The indictment accused defendant of committing acts of sexual abuse on his son (hereinafter "the victim"), from August, 1993, through February 20, 1997. He pled not guilty to the charges at his arraignment held on May 28, 1997.
>
> The matter was set for trial on September 9, 1997. On July 31, 1997, defendant filed a motion for a hearing to determine the competency of the victim pursuant to R.C. 2317.01 and Evid.R. 601(A). The motion requested that the defendant be permitted to hire and pay for an expert to determine competency of the child victim and that

medical records relative to the victim be produced. The brief in support of said motion alleged that the child victim had been hospitalized for treatment of mental conditions which may render him incompetent to testify. The State filed a written motion objecting to the competency hearing contending that since the alleged child victim was now fourteen years of age, he was competent to testify under Evid.R. 601(A).

The trial was continued at the request of the defendant. Thereafter, the parties agreed that Howard A. Beazel, Psy. D., Clinical Psychologist, be appointed as the court's own witness to conduct an examination and provide a report of the victim's competency to testify as a witness in the case. Specifically, the examination was to determine if the victim was of sound mind, capable of receiving just impressions of facts and relating them truthfully.

On August 22, 1997, a written "waiver of right to speedy trial" signed by defendant and counsel was filed with the court. The waiver specifically noted that additional time was needed by defendant "[t]o fully evaluate requested psychological records for said [victim] in preparation for cross-examination of said child if found competent to testify."

On December 23, 1997, Dr. Beazel filed a report with the court wherein he set forth his opinion that the child was competent to testify. After the competency hearing, held January 5, 1998, the court found the victim competent to testify. The trial judge set the trial for March 10, 1998.

On January 7, 1998, defendant filed a jury demand. On March 6, 1998, defense counsel subpoenaed ten witnesses to testify at trial. On March 10, 1998, defendant filed a motion *in limine* asking the Court to exclude the testimony of state witness Cynthia L. King "because she is not an expert as defined in Evid.R. 702(C)."

For some reason, not readily apparent from the record, the trial was continued to May 26, 1998. On March 20, 1998, a written waiver of right to trial by jury, signed by the defendant and his attorney, was filed. The trial was rescheduled to April 15, 1998.

On April 15, 1998, defendant's trial to the court commenced. The state called four witnesses and the alleged child victim in its case-in-chief. The following facts were elicited at trial:

2

On February 20, 1997, Deborah Capp-Salupo, principal at Cambridge Junior High School, met with the victim, a seventh grade student, in a room next to his classroom to talk about an argument he had with another student. Salupo observed that he was "very agitated, angry." 1T.R. at 68. The victim told her that "there were things making him angry at home ... [,] my dad makes me do things ... to him ..." when he was home alone with his dad. 1T.R. at 76.

Principal Salupo decided to take the victim to the office of the guidance counselor, Julie Orsini. Orsini then contacted Laura Harris, an intake assessment worker with Guernsey County Children's Services. Harris, in turn called police detective Bob Edwards and asked him to meet her outside of the school. Harris and Detective Edwards interviewed the child victim in Orsini's office. Harris interviewed the victim with Orsini and Detective Edwards present to find out what happened to the boy.

Doctor Joseph Boca examined the victim in the emergency room at Southeastern Ohio Regional Medical Center. During the medical history the child victim related that, usually, his father placed his penis in his rectum once or twice a month. 1T.R. at 27. Dr. Boca conducted a physical exam of Jerry. The doctor found that the sphincter muscle, the round muscle found in the anus, was much looser than would be expected in a child or a young adult. The doctor testified this was a result of repeated trauma. He also noted that the prostate was very tender and inflamed. He observed "some older bruising" inside the rectal area. He testified that the condition described would be consistent with an outside object going inside the anal sphincter. Doctor Boca added that the victim's "physical condition [was] consistent with having been repeatedly anally penetrated ... [because of the] ... looseness of the muscle and by the bruising and by the prostate being inflamed." 1T.R. 35. The doctor testified that he would expect such bruising as was found to dissipate in a couple of weeks to two to three months. 1T.R. at 31-32. The Doctor stated that he was of the opinion that the victim was a "victim of sexual abuse". *Id.*

The victim testified to numerous instances of sexual abuse perpetrated upon him by his father, beginning when he was "about eight or nine." 1T.R. at 124, 136. The sexual abuse continued until it ended "a couple of days" before the victim met with Ms. Salupo, his school principal, on February 20, 1997. 1T.R. at 143.

The victim related instances where he would be forced to perform fellatio on the defendant. He told the trial judge that he would "jack-off' the defendant and that the defendant would "jack him off ...".

The victim testified that the defendant would put his penis in the victim's "rear end". 1T.R. at 128. On the witness stand, the victim stated this happened "four or five times."

The victim described other acts of sexual abuse by his father. One such act consisted of the defendant placing a plastic bag on the bed. "He'd lay it out straight and everything and put baby oil on ... the plastic and on him and on me..I'd get on top of it and he's get on top of my back and move back and forth." 1T.R. at 133-134. This was the act engaged in more than any other. "That was the normal like routine. We did that almost ever since, ever since we first did it we done it since then." 1T.R. at 134. The act would stop when the defendant would ejaculate "on the plastic underneath me." 1T.R. at 135. The victim testified that when the defendant would ask him to do those acts, "I just did what I was told ... [b]ecause I was scared. I didn't know if I said no to him what he would do to me." 1T.R. at 132, 157. The victim thought that if he did not comply, his father would hurt his mom or hurt him. 1T.R. at165. He also testified that he had refused to participate in sexual acts with the defendant, but "[h]e'd tell me like he'll ground me or he'll threaten to kill my mom." 1T.R. at 143.

Cynthia King, a licensed independent social worker was called as a witness by the State. She interviewed the victim and concluded that he displayed characteristics common to children who had been sexually abused. She testified that, although the victim denied recent anal penetration, time frames are difficult for children to establish and it was common for adolescent males to push an instance of sexual abuse, back to earlier periods of time, to a time when they were younger. 1 T.R. 90-91.

The State then rested. 1 T.R. at 95. The defense chose to rest without presenting witnesses.

On April 17, 1998, the trial court found the defendant guilty as charged. 2 T.R. at 125. Judgment of conviction was entered accordingly.

Exhibit F to *Return of Writ*.

4

## II. PROCEDURAL HISTORY

Petitioner was indicted by the 1997 term of the Guernsey County grand jury on four counts of rape, in violation of O.R.C. §2907.02, and four counts of gross sexual imposition, in violation of O.R.C. §2907.05. Exhibit A to *Return of Writ*. While represented by counsel, petitioner waived his right to a jury trial and proceeded to a bench trial. On April 16, 1998, petitioner was found guilty as charged. Exhibit B to *Return of Writ*. On June 1, 1998, petitioner was adjudicated a sexual predator, and sentenced to an aggregate term of 22 years incarceration. Exhibit C to *Return of Writ*. Represented by new counsel, petitioner filed a timely appeal of his convictions to the Fifth District Court of Appeals. He asserted the following assignments of error:

> 1. Counsel for defendant-appellant committed egregious errors during the trial of his case, and the cumulative effect of such errors violated his right to the effective assistance of counsel guaranteed by Article I, Section 10 of the Constitution of the States of Ohio, and the Sixth Amendment to the United States Constitution.

> 2. It was plain error to allow expert opinion testimony as to the veracity of the account or statements of the victim.

> 3. The foundation for Cynthia King's opinion that the victim displayed characteristics consistent with a sexually abused child was her belief in the truthfulness of his statements, and her testimony should not have been received. The admission of this testimony was plain error.

> 4. The trial court erred when it allowed the testimony of principal Deborah Capp-Salupo into evidence under Evid.R. 803(3).

> 5. The appellant's convictions of rape embodied in counts three and four of the indictment were against the manifest weight of the evidence and based on insufficient evidence in violation of his right to due process of law guaranteed him by the Fifth Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment, and Article I, Section 10 of the Constitution of the State of Ohio.

6. The trial court erred when it increased appellant's lawful sentence after he has served part of the sentence in violation of the Double Jeopardy Clause of the Fifth Amendment of the Constitution of the United States made applicable to the states through the Fourteenth Amendment to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

7. The trial court committed error prejudicial to the appellant when it modified the sentence journalized June 2, 1998, by a *nunc pro tunc* entry journalized June 11, 1998, without the appellant being present in court.

*See* Exhibit F to *Return of Writ*. On January 25, 2000, the appellate court affirmed the judgment of

the trial court. *Id*. Represented by the Ohio Public Defender, petitioner filed a timely appeal of the

appellate court's decision to the Ohio Supreme Court. He asserted the following propositions of law:

1. A criminal defendant is deprived of his state and federal constitutional rights to the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, Sec. 10 of the Ohio Constitution when counsel fails to object to inadmissible hearsay testimony.

2. A criminal defendant is deprived of his state and federal constitutional rights to the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, Sec. 10 of the Ohio Constitution when counsel fails to object to expert testimony regarding the veracity of the statements of a child declarant.

3. A criminal defendant is deprived of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Art. I, Sec. 10 and 16 of the Ohio Constitution when counsel fails to present a defense.

4. A trial court's admission of hearsay testimony and testimony as to the veracity of the alleged victim's statements over the objections of counsel violates a defendant's right to a fundamentally fair trial under the Fourteenth Amendment to the United States Constitution and Sec. 1, Art. 16 of the Ohio Constitution.

5. A trial court's admission of opinion testimony that lacks a proper foundation over the objection of counsel violates a defendant's right

6

to a fundamentally fair trial under the Fourteenth Amendment to the United States Constitution and Sec. 1, Art. 16 of the Ohio Constitution.

6. When the victim testifies that no sexual conduct occurred and the state presents no evidence to the contrary, the state has not produced sufficient evidence to prove, beyond a reasonable doubt, that the defendant is guilty of rape. This defect violates the defendant's right to due process under the Fourteenth Amendment to the United States Constitution.

7. Ohio's Sexual Predator Law is unconstitutional.

8. A criminal defendant is denied the effective assistance of appellate counsel, a right secured by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, when counsel fails to raise issues on appeal that would have changed the outcome of the appeal, had the appellate court applied the appropriate standards.

Exhibit G to *Return of Writ*. On May 17, 2000, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving a substantial constitutional question. Exhibit I to *Return of Writ*.

On December 21, 1998, petitioner filed a petition for post conviction relief with the trial court. He asserted that he was denied the effective assistance of counsel due to his attorney's failure to call petitioner or other witnesses to testify at trial. On June 4, 1999, the trial court denied petitioner's post conviction petition. Exhibit J to *Return of Writ*. Represented by the Ohio Public Defender, petitioner filed a timely appeal of the trial court's decision to the Fifth District Court of Appeals. He asserted the following claim:

The trial court erred when it denied Mr. Francis's post conviction petition without holding an evidentiary hearing thereby violating Mr. Francis's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

7

Exhibit K to *Return of Writ*. On February 23, 2000, the appellate court remanded the case to the trial

court for an evidentiary hearing on petitioner's allegation of ineffective assistance of counsel due

to his attorney's failure to call witnesses to testify regarding the victim's motive to fabricate; the

court of appeals otherwise affirmed the judgment of the trial court. Exhibit L to *Return of Writ*. Still

represented by the Ohio Public Defender, petitioner filed a timely appeal of the appellate court's

decision to the Ohio Supreme Court. He asserted the following propositions of law:

> 1. A criminal defendant is denied his constitutional rights under the
> Sixth and Fourteenth Amendment to the United States Constitution
> and Art. I, Section 10 of the Ohio Constitution when his trial attorney
> fails to present a defense and to call witnesses whose testimony
> would have provided an explanation for the medical findings, which
> suggested that the victim had been sexually abused, and would have
> impeached the victim's testimony.
>
> 2. When a claim for post conviction relief is sufficient on its face to
> raise an issue that the petitioner's conviction is void or voidable on
> constitutional grounds, and the petitioner has supported his claim
> with affidavits that provide sufficient operative facts to prove his
> claim, the trial court is required to hold an evidentiary hearing on the
> issue. Failure to hold an evidentiary hearing and to allow the
> petitioner to develop his claims violates the petitioner's rights under
> the Fifth and Fourteenth Amendments to the United States
> Constitution and Section 16, Article I to the Ohio Constitution.

Exhibit M to *Return of Writ*. On June 14, 2000, the Ohio Supreme Court declined jurisdiction to hear

the case and dismissed the appeal as not involving a substantial constitutional question. Exhibit N

to *Return of Writ*. Meanwhile, pursuant to the remand by the state appellate court, the trial court

conducted an evidentiary hearing on petitioner's post conviction action, following which it denied

petitioner's claim of ineffective assistance of trial counsel for failure to call witnesses at trial.

Exhibit O to *Return of Writ*. Petitioner filed a timely appeal of the trial court's decision. He asserted

the following assignments of error:

8

> 1. The trial court erred in finding that Mr. Francis had the effective assistance of counsel.
>
> 2. The trial court erred in finding that the testimony of a legal expert was not admissible.

*See* Exhibit P to *Return of Writ*. The state appellate court sustained petitioner's second assignment of error and again remanded the case to the trial court "to review and consider the expert testimony of Donald Schumacher," but otherwise affirmed the judgment of the trial court. *Id.* Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court. He asserted the following proposition of law:

> When trial counsel fails to call key witnesses to testify on behalf of the defense, his performance is constitutionally ineffective thereby violating the defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

Exhibit Q to *Return of Writ*. On July 3, 2002, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving a substantial constitutional question. Exhibit R to *Return of Writ*. Meanwhile, pursuant to the remand by the state appellate court, the trial court conducted a second evidentiary hearing, but thereafter denied petitioner's claim of ineffective assistance of trial counsel. Exhibit S to *Return of Writ*. Petitioner filed a timely appeal of the trial court's decision to the Fifth District Court of Appeals. He asserted the following assignment of error:

> The trial court erred in finding that Mr. Francis was not prejudiced by trial counsel's deficient performance.

*See* Exhibit T to *Return of Writ*. On May 23, 2003, the appellate court affirmed the judgment of the trial court. Exhibit T to *Return of Writ*. Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court.  He asserted as follows:

> A defendant is deprived of effective assistance of counsel when counsel fails to call known and available witnesses who possessed evidence of the prosecuting witness' recantation of the charges and motivation to falsely accuse the defendant.

Exhibit U to *Return of Writ.*  On September 24, 2003, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving a substantial constitutional question. Exhibit V to *Return of Writ.* Petitioner also filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B) in which he asserted the ineffective assistance of appellate counsel. Exhibit W to *Return of Writ.*  On August 14, 2000, the state appellate court denied petitioner's application. Exhibit X to *Return of Writ.*  Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court. Exhibit Y to *Return of Writ.*  However, on November 22, 2000, the Ohio Supreme Court dismissed the appeal as not involving a substantial constitutional question. Exhibit AA to *Return of Writ.*

On August 31, 2004, still represented by the Ohio Public Defender, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He asserts that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Petitioner Francis was deprived of his federal constitutional right to the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to object to inadmissible hearsay testimony.

> 2. Petitioner Francis was deprived of his federal constitutional right to the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to object to expert testimony regarding the veracity of the statements of a child declarant.

3. Petitioner Francis was deprived of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when counsel failed to present a defense.

4. The trial court's admission of hearsay testimony and testimony as to the veracity of the alleged victim's statements over the objections of counsel violated petitioner Francis's right to a fundamentally fair trial under the Fourteenth Amendment to the United States Constitution.

5. The state failed to produce sufficient evidence to prove beyond a reasonable doubt that the petitioner is guilty of rape. This defect violated the petitioner's right to due process under the Fourteenth Amendment to the United States Constitution.

It is the position of the respondent that all of petitioner's claims are without merit.

### III. CLAIMS ONE, TWO, and FOUR

In claim four, petitioner asserts that he was denied a fair trial due to admission of hearsay testimony and improper testimony regarding the veracity of the victim by Dr. Joseph Boca, Cynthia King, and Deborah Capp-Salupo.[1]  In claims one and two, petitioner asserts that he was denied the

---

[1]  In his traverse, petitioner asserts that Capp-Salupo impermissibly testified

as to the alleged victim's general veracity in addressing his past behavioral problems.  She found Jerry Francis "receptive" and "very honest," would always admit to misbehaviors and "[h]is stories would generally coincide very closely with the teacher or the other students involved."

*Traverse*, at 9, citing *Transcript* at 65-66.  However, the record does not reflect that petitioner ever presented this claim to the state courts. *See Supplemental Return of Writ; Exhibit G* to Return of Writ.  Petitioner presented on direct appeal the claim relating to improper hearsay statements by Capp-Salupo.  Thus, petitioner's claim that he was denied a fair trial due to improper testimony by Capp-Salupo regarding the credibility of the victim, and his claim of ineffective assistance of counsel due to his attorney's failure to object to such testimony appear to have been procedurally defaulted.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Procedural default is an affirmative defense that ordinarily is waived if not raised by the respondent.  *See Trest v. Cain*, 522 U.S. 87 (1997); *Grey v. Netherland*, 518 U.S. 152, 165 (1996).  However, it is not apparent from the petition that petitioner is raising allegations regarding Capp-Salupo's improper statements regarding the credibility of the victim.  Further,

11

effective assistance of trial counsel because his attorney failed to object to such testimony. Additionally, petitioner asserts that he was denied the effective assistance of counsel due to his attorney's failure to object to hearsay testimony by Linda Harris, a Guernsey County Children Services case worker, regarding statements by the victim, his siblings, and his mother.

Petitioner complains that Deborah Capp-Salupo, the principal of Cambridge Junior High School, improperly testified that Ray told her:

> my dad makes me do things and what kinds of things and things to him.

*Transcript*, at 77.

> [F]rom what I was told it was very graphic when Children's Services and the police detective and Miss Orsini were in there and I did not stay for that.

*Id*. (Emphasis added.)

> Q.  Did he ever recant to you what he had told you that his dad makes him do stuff to him?
>
> A.  No.  He never.  No.
>
> ***
>
> ... And I also said to him have you told anybody else about what's going on and he either told me a brother or a cousin knew and I can't remember which but I know there was another family member that he had told me he had told.

*Id*., at 79-80.  Petitioner also complains that Cynthia King, a social worker who conducted a forensic interview of Ray at the request of Guernsey County Children Services, was permitted to testify

---

petitioner, who is represented by counsel, may not amend the petition via his Traverse to include allegations that were neither presented to nor considered by the state courts.  This Court, therefore, will not address petitioner's claims involving allegedly improper testimony of the veracity of the victim by Capp-Salupo.

regarding her opinion that Ray exhibited characteristics associated with child sexual abuse victims when "her opinion was almost exclusively grounded upon her belief that Jerry Ray was telling the truth." *Traverse*, at 10. Petitioner also contends that King's testimony regarding her interview techniques was improper. Additionally, petitioner complains King made hearsay statements regarding Jerry Ray's allegations against his father. Similarly, petitioner complains that Laura Harris, a social worker with Guernsey County Children's Services, made hearsay statements regarding Jerry Ray's allegations:

> [H]e... told us that his dad had performed oral sex on him... his dad had him perform oral sex on his father, he had told us that his father had gotten on back of him and also he had gotten on his dad's back. He had said that his dad attempted to have anal sex with him but he had said he would move around. He had said that this had been going on for years, that it would usually occur when his mother was at work, that he told his brothers about it and had also told his mom about it.

*Transcript,* at 90-91. Harris also testified to statements by Ray's siblings:

> Q. And did the brothers indicate that they were aware of what their brother was complaining about?
>
> A. Yes.

*Id*., at 93.

> Q. [W]ithout going into the specifics... Did they confirm some of what had been stated to you by Jerry Ray Francis, III?
>
> A. Yes.

*Id*., at 94. Harris also testified to statements by Ray's mother:

> Q. ... Jerry Francis, III, had indicated to you that he had told his mother?
>
> A. That's correct.

Q.  Did you ask his mother that?

A.  Yes, I did.

Q.  And what did she say?

A.  She confirmed that she had been told this on two separate occasions.

Q.  By Jerry Francis, III?

A.  Yes.

*Id.*, at 98-99.  Finally, petitioner complains that Dr. Boca testified as follows:

A.  As reflected in my dictation, he was very difficult to get a history from because he had – he was obviously troubled and had poor eye contact but I did ask him to specifically state what parts of the body were used with what parts of the body and by whom so I would not be leading him in the questioning.

Q.  And why is it important not to be leading or suggestive in the questioning in these types of cases from your training?

A.  *In order to get to the truth and to also be prepared for this type of court situation*.

*Id.*, at 25-26 (Emphasis added).

Q.  Doctor, do you have an opinion whether Jerry Ray Francis, III was a victim of sexual abuse?

A.  His history and his physical examination are consistent with that.

*Id.*, at 35.

All of these claims were rejected by the state appellate court as follows:

The second assignment of error as set forth by appellant alleges that it was plain error to allow expert opinion as to the veracity of statements made by the victim, but the second assignment of error does not state whose testimony is at issue. For purposes of this assignment, we shall presume that appellant is referring to the testimony of both Dr. Joseph Boca and Cynthia King since these

14

experts are the ones referred to by the appellant in his discussion of assignment of error I-B and I-C.

We shall first discuss the testimony of Dr. Joseph Boca. Dr. Boca is an emergency medicine physician who examined the victim on February 20, 1997, the day after the victim disclosed his sexual abuse to school officials. Dr. Boca took a history from the child before doing a physical examination. Dr. Boca testified that he was trained "to not be leading the patients" and "to get [the patients] to express in their own words what had happened ...". 1 T.R. at 25. Dr. Boca, on cross examination, further testified that, "[a]s part of our training we have them specifically state the people that were involved, if there were other people, rather than saying did your father or whatever we say I need to know exactly in your words who it was and we also do not state specific body parts. We have him state the exact body parts and the contact which is why it took a long time because he didn't want to say these." 1 T.R. at 40. Dr. Boca merely stated he used no leading or suggestive questions in his interview. This is an issue Dr. Boca could have been appropriately cross examined on even if not raised in the direct examination. We do not find that this testimony violated the holding of *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, that an expert may not give an opinion of the veracity of a child's statements. Therefore, it was not error for the trial court to allow the testimony of Dr. Boca regarding the non-leading nature of his questioning of the victim while Dr. Boca was trying to gather a history from the child prior to the physical exam of the child for alleged sexual abuse. [FN1]

FN1. *State v. Dever* (1992), 64 Ohio St.3d 401, 596 N.E.2d 436 found specifically that statements made by a child during a medical exam identifying the perpetrator of sexual abuse, if made for the purpose of medical diagnosis or treatment, are admissible pursuant to Evidentiary Rule 803(4), when such statements are made for the purposes enumerated in that rule.

Assignment of error II as it regards the testimony of Cynthia King and assignment of error III which alleges that it was plain error for the trial court to admit Ms. King's opinion that the victim displayed characteristics associated with children who were sexually abused, shall be discussed together. Further, upon review of the record, we find that defense counsel objected sufficiently to preserve this issue for appeal. [FN2] As such, we will review Ms. King's testimony under a harmless error standard.

15

FN2. Trial counsel did object throughout the testimony of Ms. King. At one point, counsel even objects and states, "[s]he has done everything, but say the [sic] believes this young man is telling the truth." 2 T.R. at 67. Trial counsel, however, did not object at the appropriate point of time and we could review this issue under a plain error standard, as was briefed by appellant and appellee. However, we find that the record indicates that appellant objected sufficiently that this error was preserved for appeal and the trial court was given the opportunity to take steps to correct any error which may have occurred. This issue will, therefore, be considered under the harmless error standard.

Ms. King, a Licensed Independent Socialworker, was called upon by the Guernsey County Department of Human Services solely for the purposes of a forensic investigatory interview of the victim. Ms. King testified that she looks for "[c]onsistencies, spontaneous corrections, reactions to specific material, and the extent of detail" when conducting this type of interview. 1 T.R. at 222. We find that Ms. King used these measures to assess the credibility of the victim's statements made to Ms. King. Ms. King even testified that the interview technique of asking a question several different ways during different parts of an interview (circular questioning) in order to assess the consistencies of answers, is a generally accepted interviewing technique used in all types of forensic interviews, not just when assessing child sexual abuse. 2 T.R. at 16. Ms. King also testified that she looked at the victim's attitude toward going home in "looking at the credibility issue." 2 T.R. at 88.

In *State v. Stowers* (1998), 81 Ohio St.3d 260, 690 N.E.2d 881, the Supreme Court of Ohio found "[a]n expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence." *Stowers,* page 261, 690 N.E.2d 881. In *Stowers,* the Ohio Supreme Court specifically sets forth that an expert can explain that behaviors like recantation of accusations and delayed disclosure of incidents of sexual abuse are seen in children that have been sexually abused. *Stowers,* at 263, 690 N.E.2d 881. "Such testimony is permitted to counter balance the trier of fact's natural tendency to assess recantation and delayed disclosure as weighing against the believability and truthfulness of the witness." *Stowers,* at 263, 690 N.E.2d 881. While we agree that this area of the law is somewhat murky, perhaps a line from *Boston, infra,* helps to shine a bit of a light, even if only to be used case by case. "Most

16

jurors would not be aware, in their every day experiences, of how sexually abused children might respond to abuse. Incest is prohibited in all or almost all cultures and the common experience of a juror may represent a less-than-adequate foundation for assessing whether a child has been sexually abused." *Boston, infra,* at 128. The guidelines then were originally set forth in *Boston:* 1) An expert may not give an opinion as to the veracity of a child's statement, 2) but there are times an expert may be able to impart specialized knowledge that would help the trier of fact assess a statement, *i.e.* recantation, delayed disclosure, explanation of why an abused child would still love the abuser, explanation of what is an age appropriate description. Providing specialized knowledge of child development or adolescence as it relates to the issue of sexual abuse is not the same as providing specialized knowledge of factors generally used to evaluate credibility.

From the trial court's discussion of these issues during the *voir dire* of Ms. King, we find the court was aware of the guidelines of *Boston, infra,* and attempted to follow them:

THE COURT: Before we turn to the *voir dire* examination to determine the qualifications of the expert witness to testify and express an opinion in this case I believe it would be helpful to the Court to hear, as the Court is both the trier of fact and the finder of law in this case and is going to be asked to perform both of those functions shortly, I think it would be very helpful at this time if I hear exactly what the witness did in this case on which she intends to express her opinion and then I will permit the *voir dire*. For I am not certain and the discovery materials do not reflect exactly what was done. So if you could give me that please and once she has what she has done to base her opinion on in this case then I'll turn to *voir dire* examination by defense counsel.

* * *

THE COURT: Mr. Plummer, you may inquire. This will be a portion of the foundation for the testimony. Continue, please.

1 T.R. at 224-225.

Following the conclusion of Ms. King's direct testimony, the trial court stated "[t]his is *vore (sic) dire* examination on cross examination of the qualifications and the underlying basis of the tendered expert opinion. You may continue." 2 T.R. at 8. During the *voir dire* of Ms. King, the testimony included her background and the

various interview techniques used by her in assessing whether the child was a victim of sexual abuse.

In order to qualify as an expert under Evid. R. 705, the expert "may testify in terms of opinion or inference and give his reasons therefore after disclosure of the underlying facts or data." Under Evid. R. 703 "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Therefore, in Ms. King's testimony to the trial court, in his stead as a trier of the law, it was proper for her to state the underlying facts upon which her opinion was based. Ms. King testified her opinion was based upon the records supplied by the Guernsey County Children's Services Board, and her interview with the victim. 2 T.R. at 12.

The thrust of appellant's argument is that Ms. King's opinion was based on her opinion that the victim was being truthful. Based upon the following exchange between the trial court and Ms. King, we find the trial court was cognizant of the inappropriateness of such a credibility based opinion and Ms. King understood that rule:

THE COUNTY (SIC): All right. Thank you that's sufficient for what I needed to know. Also I need to know as a part of that testimony and expert opinion that you have been permitted to express have you ever concluded that a child was not truthful in allegations of sexual abuse, and expressed that opinion in any Court?

A. In the court cases that I have testified in my professional opinion as an expert witness has been that the child has been sexually abused. However, I have submitted in written reports to the Court my professional opinion that a child has not been sexually abused.

THE COURT: And you are generally aware of the rules of law that must guide the Court that testimony regarding sexual abuse of children is admissible providing the expert does not give an opinion as to whether the victim is being truthful or not, and whether she or he states the victim is a sexually abused child, but the expert may assist the trier of fact to understand the evidence, and of whether there is certain characteristics which frequently appear in child abuse victims. Do you understand that generally to be the perimeters of the opinion you may express.

A. Yes sir I do.

18

2 T.R. at 19-20. After the extensive *voir dire*, the trial court specifically found Ms. King's testimony qualified under Evid. R. 701, 702(C) and 705. 2 T.R. at 37- 39. Given the trial court's decision and admonishment to Ms. King that she could not testify as to the victim's credibility, we conclude it was not error to permit Ms. King to testify.

During her "in chief" direct examination, Ms. King engaged in an extended discourse about the specific allegations of the crime. 2 T.R. at 42-53. This testimony was hearsay and did not qualify under an exception to the hearsay rule as a statement given for purposes of medical diagnosis or treatment. *See,* Evid.R. 803(4). Ms. King admitted she did not see the victim for diagnosis or treatment. 1 T.R. at 225. However, given the overwhelming evidence by the victim and Dr. Boca, including specific physical findings, we find this to be harmless error under Crim. R. 52(A).

As stated previously, *a teenage victim* testified to the abuse and there was *strong physical evidence* of repeated sexual abuse presented by a medical doctor in support of the victim's claim of sexual abuse. The case did not turn solely on the testimony of Ms. King. The case *sub judice* was conducted before the bench, not a jury. As such, not only does the presumption that the court will consider only relevant testimony apply, *State v. Post* (1987), 32 Ohio St.3d 380, 384, 513 N.E.2d 754, *cert. denied* (1988), 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023, *reh'g denied* (1988), 484 U.S. 1016, 108 S.Ct. 1492, 99 L.Ed.2d 19, but the court in this case was vigilant and vocal on the record as to what evidence such experts could present and what evidence could not be considered. *See* 2 T.R. 19-20, 2 T.R. at 38.

In conclusion, we find the confusion generated by the various types of testimony was the natural result of the fact that the trier of fact and law were one [and] the same. The trial court *sub judice* understood his role during *voir dire* and in fact invited some discourse which would have been inappropriate at a jury trial. The general thrust of these assignments of error is that an expert who is not a medical professional treating under Evid. R. 803(4) may not testify as to specifics of the victim's statements and may not testify as to the credibility of the victim. Reading the transcript as a whole, we find the trial court violated neither restriction....

The standard of review for a claim of ineffective counsel was established in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 and adopted by Ohio in *State v. Bradley*

(1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases set forth a two-pronged analysis.

The first prong of the analysis requires a showing that counsel's assistance was ineffective in that it fell below an objective standard of reasonable representation and violated essential duties to the client. The second prong requires a showing of actual prejudice by counsel's ineffectiveness such that but for the counsel's unprofessional error the outcome of the trial would have been different. A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. *Bradley,* 42 Ohio St.3d at 143, 538 N.E.2d 373 (citing *Strickland,* 466 U.S. at 697.)

Appellant cites four instances of conduct of defense counsel that are purported examples of ineffective counsel. Three of these claims involve the failure to object to testimony presented by State's witnesses.

It must be noted that this case was tried before the bench. There is a presumption that a judge considers only the relevant information presented. *State v. Post* (1987), 32 Ohio St.3d 380, 384, 513 N.E.2d 754, *cert. denied,* (1988), 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023, *reh'ring den.,* (1988), 484 U.S. 1016, 108 S.Ct. 1492, 99 L.Ed.2d 719. As the trier of fact, the court is presumed to know what evidence is admissible and relevant to rendering a verdict and what evidence is irrelevant.

## A

Appellant's first cited instance of ineffective counsel concerns the testimony of Laura Harris. Laura Harris is a social worker with the Guernsey County Children's Services, who investigates reports of abuse and assesses the risk to children. While the court acknowledges that the testimony of Harris may have been hearsay under *State v. Chappell* (1994), 97 Ohio App.3d 515, 528-535, 646 N.E.2d 1191, as in *Chappell,* this testimony was cumulative to the testimony presented by the victim and harmless. Where there is sufficient independent evidence of a defendant's guilt, which renders the admitted statement harmless, there is no prejudice and reversal is unwarranted. *State v. Moritz* (1980), 63 Ohio St.2d 150, 407 N.E.2d 1268. As in *Chappell,* the alleged victim in this case testified at trial and was subjected to full cross examination by defense counsel. *Chappell,* 97 Ohio App.3d at 534-535, 646 N.E.2d 1191. The court finds that the admission of the statement of the social worker was

harmless and not prejudicial. Since the issue may be disposed of under the second prong of the *Strickland* test, there is no need to consider whether the testimony of Ms. Harris was admissible or whether failure to object to such testimony was ineffective assistance of counsel.

### B & C

In appellant's second claimed instance of ineffective counsel, appellant argues that trial counsel should have objected to the testimony of Dr. Boca and Cynthia King, expert witnesses who purportedly provided opinions as to the truthfulness of the child victim. In appellants' third contention of ineffective assistance of counsel, appellant alleges that trial counsel should have objected to the testimony of Cynthia King, an expert witness who had interviewed the child victim and compared the child's characteristics to characteristics found in sexually abused children.

In our discussion of the first portion of the second assignment of error, we found that the admission of Dr. Boca's testimony *in toto* was not error. Therefore, trial counsel did not fall below an objective standard of reasonable representation by failing to object to Dr. Boca's's testimony.

In our discussion of the second part of the second assignment of error and of the third assignment of error, we found that defense counsel did object sufficiently to preserve for appeal the issue of error on the admittance of portions of Ms. King's testimony. [FN3] Therefore, we find that our ruling on the second and third assignments of error is dispositive of the ineffective assistance of counsel claim also. Even if we were to find that counsel failed to preserve this issue for appeal, we have previously found that appellant was not prejudiced by the admittance of Ms. King's testimony.

FN3. *See* assignment of error II and III.

***

[A]ppellant contends that admission of the testimony of the child victim's principal, Deborah Capp-Salupo, over the objection of trial counsel, constituted error.

The test for determining whether the erroneous admission of evidence is harmless and non-constitutional error requires the reviewing court to look at the whole record, leaving out the disputed evidence, and

then to decide whether there is other substantial evidence to support the guilty verdict. *State v. David* (1975), 44 Ohio App.2d 335, 347, 338 N.E.2d 793. If there is substantial evidence, the conviction should be affirmed. *Id*.

As found in the previous assignments of error, there is substantial evidence in the record, presented by Dr. Boca and the victim. The testimony of the Principal is cumulative. The court finds no need to decide whether the admission of Principal Capp-Salupo's testimony was error since, assuming *arguendo* that the admission of the testimony was error, there was other substantial evidence to support the guilty verdict so that any error was harmless.

Exhibit F to *Return of Writ.*

Petitioner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997). Under 28 U.S.C. §2254(e)(1), the state court's factual findings are entitled to a presumption of correctness:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id*. Further, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

22

> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Petitioner has failed to meet this standard here.

To the extent that petitioner now asserts that admission of any of the foregoing testimony by Boca, King, Harris, or Capp-Salupo violated the Confrontation Clause, such claim was never presented to the state courts, and will not be considered here. In order to exhaust available state remedies, a petitioner must first fairly present the substance of his federal habeas corpus claims to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). "The state courts must be provided with a fair opportunity to apply controlling legal principles to the facts bearing upon petitioner's constitutional claims." *Sampson v. Love*, 782 F.2d 53, 55 (6th Cir. 1986). Petitioner does not fairly present his claim simply because the necessary facts supporting a federal constitutional claim are present or because the constitutional claim appears to be self-evident. *Haggins v. Warden*, 715 F.2d 1050, 1054 (6th Cir. 1983)(citing *Harless*, 459 U.S. at 6). "A petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions employing Constitutional analysis, or state decisions employing Constitutional analysis in similar fact patterns." *Levine v. Trovik*, 986 F.2d 1506, 1515 (6th Cir.

23

1993)(citing *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987)).  Courts normally require more than a single broad generalization that petitioner was denied a "fair trial" or "due process of law." *Franklin*, 811 F.2d at 326; *Petrucelli v. Coombe*, 735 F.2d 684, 688 (6th Cir. 1984).  Petitioner, however, need not "cite book and verse on the federal constitution."  *Picard,* 404 U.S. at 277 (quoting *Daugharty v. Gladden*, 257 F.2d 750, 7758 (9th Cir. 1960)).  The Sixth Circuit has strictly followed the requirement that petitioner fairly present his federal constitutional claims to the state courts as a precondition to federal habeas review.  *Weaver v. Foltz*, 888 F.2d 1097, 1098 (6th Cir. 1989).  Further, petitioner has failed to establish cause or prejudice for his failure to present this claim to the state courts.

Federal habeas review of state court evidentiary rulings is extremely limited.  *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir. 1990).  Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983), *cert. denied*, 464 U.S. 962 (1983).  When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged.  *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir. 1980), *cert. denied*, 456 U.S. 980 (1982).  Upon review of the record, and for the reasons discussed by the state appellate court, the Court concludes that admission of the evidence complained of did not deprive petitioner of a constitutionally fair trial.

Petitioner also alleges that he was denied the effective assistance of counsel because his attorney failed to object to the testimony previously described.  The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397

24

U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*, at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

Again, the decision of the state appellate court is entitled to a presumption of correctness under 28 U.S.C. §2254(d), (e), and petitioner has failed to establish any reason for this Court to disturb those findings here.  Petitioner has failed to establish the ineffective assistance of counsel under *Strickland* based upon his attorney's failure to object to testimony by Boca, King, Harris, or Capp-Salupo.  Boca's testimony was admissible under Ohio law.  Further, the state appellate court

25

concluded that trial counsel had objected sufficiently to preserve any alleged error regarding complained of statements by King.  Finally, for the reasons discussed by the state appellate court, and particularly in view of the substantial evidence of guilt, this Court likewise concludes that petitioner cannot establish prejudice from counsel's failure to object to any hearsay testimony by Harris or Capp-Salupo. Such evidence was cumulative.

Claims one, two, and four are without merit.

## IV.  CLAIM THREE

In claim three, petitioner asserts that he was denied his right to the effective assistance of counsel because his attorney failed to call any witnesses to testify for the defense. This claim was initially denied on direct appeal as follows:

> [A]ppellant argues that trial counsel was ineffective because he failed to call witnesses for the defense.
> Judicial scrutiny of counsel's performance must be highly deferential. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland, supra*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. A defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523, 539, *cert. denied* (1989), 489 U.S. 1040, 109 S.Ct. 1177, 103 L.Ed.2d 239. Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics. *State v. Hunt* (1984), 20 Ohio App.3d 310, 312, 20 OBR 411, 413, 486 N.E.2d 108, 110; *State v. Reese* (1982), 8 Ohio App.3d 202, 203, 8 OBR 273, 274, 456 N.E.2d 1253, 1254. The decision whether or not to call witnesses is a trial tactic that will not support a claim of ineffective counsel. *State v. Coulter* (1992), 75 Ohio App.3d 219, 230, 598 N.E.2d 1324.
>
> Further, appellant has not demonstrated that had his counsel presented the witnesses, including the testimony of the appellant, which he claims would have assisted his defense, the result of the trial would have been different. The court rejects appellant's argument that statements given by friends and family during the

sentencing hearing demonstrate the witnesses would have aided appellant and that their testimony would have affected the outcome of the case. Such statements are generally self-serving and given without an opportunity for cross-examination by opposing counsel. For instance, appellant's wife, Leslie Francis, asked for leniency for appellant because Ms. Francis loved the appellant "with all [her] heart" and had loved him for seventeen years. (T. at 262) The friend of the family, which appellant's counsel refers to in his brief and who spoke at the sentencing hearing, related that she and her children lived with appellant's family for "months at a time" and she did not think it possible that appellant could have hurt a child during that time. (T. pg.263) However, these statements were not under oath, nor subject to cross-examination, nor specific as to dates, and we find that those factors are fatal to appellant's argument that this friend's testimony at trial would have affected the outcome of the trial. In addition, the testimony of some of the witnesses, including the testimony of defendant, had the potential to be adverse to appellant's interests. Defense counsel would have been aware of the possible negative impact to his client and, therefore, defense counsel used reasonable trial strategy by not using these witnesses. For instance, defense counsel was put on notice that the victim's brothers, Chris and Shawn, and the victim's mother, Leslie Francis, were told about the sexual abuse by the victim long ago. This testimony, if elicited from defense witnesses, would not have helped in appellant's defense.

Exhibit F to *Return of Writ*.[2] Petitioner again raised this same claim in a petition for post conviction relief, which was denied. The state appellate court affirmed the trial court's decision, but remanded the case for an evidentiary hearing on trial counsel's failure to call witnesses to testify regarding the victim's motive to fabricate:

In his petition for postconviction relief filed December 21, 1998, appellant claimed ineffective assistance of counsel as his substantive ground for relief. In support, appellant attached thirteen affidavits of family members, friends and employers claiming they had information relevant to appellant's case but were never called to testify. The thirteen affidavits were submitted by Leslie Francis

---

[2] Petitioner also argued in the state courts that his attorney had improperly failed to call petitioner as a witness to testify on his own behalf. This claim is not presented for federal habeas corpus review and the state courts' discussion of this issue is not repeated here.

(appellant's wife and the victim's mother), Shawn Francis (appellant's twelve year old son and the victim's brother), Christopher Francis (appellant's fourteen year old son and the victim's brother), Jamie Morris (sixteen year old family friend), Sheree Davidson (adult family friend), Richard and Danielle Rings (adult family friends), Charlene Hamner (adult family friend), Angela Hamner (sixteen year old family friend), John Hamner (fourteen year old family friend and friend of the victim), Bill Yontz (adult family friend and appellant's previous employer), Al Holeton (adult family friend and appellant's previous employer), and Carol Holeton (adult family friend). In arguing the right to an evidentiary hearing in his petition for postconviction relief, appellant quoted the following from *State v. Aeh* (December 11, 1997), Franklin App. No. 97APA05-601, unreported:

'[when] a postconviction relief petitioner alleges ineffective assistance of counsel through affidavits naming uncalled witnesses whose testimony may have demonstrated evidence significant to the defendant, an evidentiary hearing should be held.'

By entry filed December 22, 1998, the trial court set the matter for "hearing without oral argument, to be based upon the pleadings then before the Court" for April 20, 1999. By entry filed June 4, 1999, the trial court addressed the affidavits, the record of the case and the verdict as follows:

2) The Court finds the Affidavits attached to the Defendant's Petition all allege reasons why the victim, Jerry R. Francis, III (the son of the Defendant, Jerry R. Francis, Jr.) would have had reason to lie. The Court has read and reviewed each Affidavit in light of the trial testimony in this case.

4) The Court finds from the Affidavits and review of the trial transcripts, no substantive ground for relief, through the Affidavits naming uncalled witnesses, as the Court does not find the testimony demonstrates any evidence significant to the outcome of the trial. The Court finds no Affidavit which would refute the physical evidence found by Dr. Bocka (sic) which is indicative of repeated abuse.

5) The Court finds the weight to be given the testimony of the victim, when compared to the findings at the emergency room at the hospital, to be unrefuted.

7) The Court finds that the credibility of the victim/Jerry Francis, III was determined by the finder of fact at trial after cross-examination

28

of Defendant's attorney which raised many of the issues that are set forth in the Affidavits.

8) The Court finds the essential facts of Jerry Francis, III's story never changed as to 1) the principal; 2) Caseworker Laura Harris; 3) Investigating Officer Robert Edwards; and 4) the State's expert, Ms. King. The Court further finds the most weight was given by the trier of fact to the fact that the emergency room doctor testified as to his findings on the very day the child/victim had told the story and was taken to the emergency room--a fact which is not refuted by any affidavit before the Court.

9) The Court further finds that the presentence investigation disclosed that the Defendant, Jerry Francis, Jr., had a prior felony record-- which would be reason for counsel's decision not to place him on the witness stand and expose the Defendant to cross-examination as to the sexual allegations that had been made against him by his son.

The standard for ineffective assistance of counsel is set forth in *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373, certiorari denied 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768. Appellant must establish two criteria:

1) [C]ounsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition.

2) [P]rejudice arises from counsel's performance.

Appellant must further establish "... but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland v. Washington* (1984), 466 U.S. 668, 696, 104 S.Ct. 2052, 80 L.Ed.2d 674. From our review of the thirteen affidavits, we find they focus on the character of appellant, the character and sexual behavior of the victim, and the victim's motive in fabricating the accusations.

\*\*\*

## CHARACTER OF THE VICTIM

Numerous affidavits described the victim as a liar, manipulator, thief and "pot" user. Some also stated the victim was cruel to animals. The affidavits of the victim's brothers, Shawn and Christopher Francis, and the affidavits of Angela Hamner and Danielle Rings addressed the victim's sexual behavior with himself and others.

29

During the trial on cross-examination, the victim admitted to lying to his parents, mistreating animals and mouthing off to teachers. T. at 185-186, 194- 195. Under Evid. R. 608(B), specific instances of the conduct of a witness may not to be proved by extrinsic evidence:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The exception built into said rule is left to the discretion of the trial court. Because the victim admitted to lying and mistreating animals on cross-examination, there would have been no purpose to permit the extrinsic evidence under the exception.

Some of the affidavits allege specific instances of sexual activity by the victim with a girlfriend as well as self digital penetration of his anus. Pursuant to R.C. 2907.02(D), the admission of evidence relating to a victim's sexual activity is generally prohibited:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Appellant argues the evidence of self digital anal penetration should have been presented because it would have explained or provided an alternative reason for the medical findings. Dr. Boca, the physician who examined appellant in the emergency room, testified to his objective medical findings after examining the victim. Dr. Boca stated the victim had a "remarkably decreased" sphincter muscle that was "looser than I would expect from a child or a young adult" and a "very tender prostate." T. at 30. Dr. Boca testified the condition of the victim's anus and sphincter muscle was consistent with "an

outside object going inside." T. at 33. Dr. Boca opined the physical findings were consistent with the sexual abuse described in the medical history. T. at 34. Dr. Boca further testified to the following:

A. To get a prostate to be in flamed (sic) especially from trauma coming from the outside in requires usually repeated the same way that the hand doesn't usually get irritated if you rub it once but rubbing it several times you then start getting inflammation.

Q. And was that condition of Jerry Ray Francis', III prostate as you observed it on February 20, 1997?

A. That is correct. It was in flamed (sic).

Q. Can you tell us as to the child your finding that the child had a weak sphincter how that was consistent with a history that the child gave to you?

A. I would not expect a 14 year old to have any looseness to the sphincter and his was very loose which was consistent with something repeatedly stretching the sphincter muscle.

Q. Doctor, was the child's physical condition consistent with having been repeatedly anally penetrated?

A. Yes, sir.

Q. Can you tell us how it was so consistent?

A. By the looseness of the muscle and by the bruising and by the prostate being inflamed.

Q. Doctor, do you have an opinion whether Jerry Ray Francis, III was a victim of sexual abuse?

A. His history and his physical examination are consistent with that.

T. at 34-35.

On cross-examination, defense counsel attempted to create an alternative cause for the damaged sphincter muscle:

Q. Doctor, are there other means other than by rectal penetration by a penis that the muscle tone that you spoke of could be soft beyond that which you would expect?

31

A. Anything that's large that keeps getting repeatedly passed through there at a time when the muscle is not relaxing like when you're having a bowel movement then the reflexes set it up to relax.

Q. Such as a finger perhaps?

A. A finger is consistent with that. It would have to be a large finger obviously not a -

Q. Now, I'm going to ask you to make an assumption at this point based on your experience and the examination that you've done bearing in mind what you've said you expect to find in the course of such an examination. You just told me that it's possible for muscle tone to be significantly softened by repeated insertion of a finger. Would that same type of insertion, doctor, also cause or perhaps exacerbate the prostatitis you testified you found in this case or cause sore or enlarged prostate in a child the age of Jerry Ray Francis, III?

A. It would have to be with someone with a large enough finger and knowing what they're doing because there are certain tricks that-- tricks that we're taught to be able to get to the proper feel and to get deep enough.

***

Q. Just to make sure that there is more than one way that this bruising could have occurred, it could have also been caused by manipulation of the rectal--of the introitus and the sphincter by somebody's finger, is that correct?

A. It would have to have a significant force plus also with it being in the front it would have to be coming from behind and aiming forward. It would be hard to do. You would have to have your finger aimed directly front in order to be coming from the front.

Q. But it is a reasonable alternative, is it not? It could have been something else other than penile penetration of the sphincter and the anus?

A. It had to have been from some force from a hard object.

* * *

32

THE COURT: Yes. You may answer the question and explain your answer is proper. Could this have been caused by a finger or other object. That's the question.

A. Whatever this trauma was consistent with an object that was at least the length of a finger but most likely longer in order to get into the deeper area. It would need to be, I can't give you the exact amount, but probably the equivalent of three or four of his fingers of whatever this child's size was width in order to be able to stretch it to that degree. If that helps to clarify things?

T. at 45-46, 54 and 56, respectively.

On redirect, Doctor Boca opined the physical findings were more consistent with something "greater than just a single finger's worth." T. at 59.

Clearly defense counsel attempted to argue an alternative cause for the physical findings and the doctor discounted the theory. To pursue such a theory in light of its questionable value was clearly within the realm of trial strategy. The trial court was correct in finding no ineffective assistance of trial counsel for failing to present the character witnesses and the evidence as to self digital penetration.

## MOTIVE TO FABRICATE

The last issue developed by the affidavits is the proposed testimony that the victim had made up the claim of sexual abuse to retaliate for being grounded by his father. The victim denied this motive. T. at 190, 195-196. The affidavit of Leslie Francis opines her son's accusations were the immediate result of his being grounded by appellant. The affidavits of Shawn and Christopher Francis state their brother had told them "he was going to get back at my dad" for grounding him and breaking up his relationship with his girlfriend. The victim then made the accusations the following day. The affidavit of Jamie Morris, the victim's sixteen year old friend, states the victim "told me he was lying about his dad, that his dad didn't do any of the things he accused him of." The affidavit of Richard Rings states the victim "told me that he was going to get back at his father for what his father did to him. I knew from the tone of his voice that he was angry and upset with his father." The affidavit of Danielle Rings states the victim "was very angry and told us that he would get back at his father no matter what happened." The next day, the victim made the accusations against his father.

33

Although defense counsel broached the issue at trial, no other evidence was presented on this retaliation theory. Evid. R. 613(B) permits impeachment of self-contradictory statements and the use of extrinsic evidence to so impeach:

Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

(2) The subject matter of the statement is one of the following:

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b) A fact that may be shown by extrinsic evidence under Evid. R. 608(A), 609, 616(B) or 706;

(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

On this very limited issue, we find the trial court should have afforded appellant a hearing to properly develop the "direct testimony" of retaliation and to qualify it under Evid. R. 613(B). This case is reversed and remanded to the trial court for a hearing for the limited purpose of review under Evid. R. 613(B).

The sole assignment of error is granted.

The judgment of the Court of Common Pleas of Guernsey County, Ohio is hereby reversed and remanded.

Exhibit L to *Return of Writ*. After the trial court conducted an evidentiary hearing, the trial court again denied petitioner's petition for post conviction relief.  The state appellate court affirmed the trial court's decision, but again remanded the case for an evidentiary hearing:

34

On December 21, 1998, appellant filed a petition for post-conviction relief, claiming his trial counsel was ineffective. Attached to the petition were 13 affidavits from family members, friends, and employers claiming they had information relevant to appellant's case, but were never called to testify. The court denied appellant's petition for post-conviction relief, finding the outcome of the trial would not have been different if the 13 witnesses had testified. This court reversed in part, finding that the court should have granted an evidentiary hearing solely on the issue of developing the direct testimony of retaliation, and qualifying it under Evid. R. 613(B). The case was remanded to the trial court for a hearing for the limited purposes of review under Evid. R. 613(B). At the evidentiary hearing on remand, the court heard the testimony of nine witnesses on behalf of appellant. Leslie Francis, appellant's wife and Jerry Ray's mother, testified that in 1994 her son alleged that his dad had abused him sexually, after his dad punished him for swimming in his underwear with his cousin, Crystal. Jerry Ray told her later that he had lied, and the allegations were not reported to authorities. She further testified she did not believe the 1997 allegations of sexual abuse, and believed Jerry Ray was trying to get back at his father for grounding him, after he was seen coming out of a trailer with his girlfriend, April Wamsley. Danielle Rings, who was married to appellant's nephew, testified that she found letters from Jerry Ray to her sister, April Wamsley. April lived with Danielle for several months in 1997. She believed the letter indicated that Jerry Ray and April were involved in a sexual relationship, and gave the letter to appellant. Richard Rings, appellant's nephew, testified that soon after appellant grounded Jerry Ray, the allegations of sexual abuse were made by Jerry Ray to his high school principal. Rings was later convicted of corruption of a minor, the victim being April Wamsley. Jamie Morris testified that she lived in the trailer occupied by the Francis family in 1994, along with her mother and her siblings. Her mother was being stalked at the time, and the family lived with the Francis family during the summer. She testified that Jerry Ray told her that everything he said about his father was a lie, but she was unable to remember whether he had told her this in 1994, or in 1997. Shawn and Christopher Francis, appellant's sons, both testified that Jerry Ray told them that he was going to get back at their dad for grounding him, after the incident with April Wamsley. Sheree Davidson, Jamie Morris' mother, testified that while they were living with the Francis family, Jerry Ray repeatedly said, after his father had been accused, that it would now be just the three boys and his mom. She also testified that he laughed inappropriately when asked to tell the truth about his dad. Two other relatives testified that Jerry Ray never told

35

them that his father had been sexually abusing him. Appellant also attempted to present the testimony of Donald Schumacher, an attorney who was called as an expert witness. While the court excluded his expert testimony, the testimony was proffered into the record. Schumacher testified during the proffer that he believed that the failure to call the witnesses whose affidavits were attached to the motion for post-conviction relief, on the issue of motive to fabricate, amounted to ineffective assistance of counsel. He predicated his opinion on the affidavit of Jamie Morris, who he testified should be given greater credibility, as she was not a family member or otherwise emotionally involved in the case. The court concluded that pursuant to Evid. R. 613, appellant produced evidence of prior inconsistent statements of Jerry Ray, which could have been offered at the trial to impeach his testimony. However, the court concluded that the evidence did not meet the ineffective assistance of counsel standard, as set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. He concluded that with the exception of Jamie Morris, all the witnesses would have both helped and hurt appellant's case, as while they testified concerning a motive to fabricate, they all testified that he never recanted his claim that his father had sexually abused him. The court concluded that the testimony of Jamie Morris was not credible, due to her confusion and inability to remember the events. The court also concluded that as a matter of law, the motive to fabricate was not of such consequence as to outweigh the medical evidence, as the victim never recanted the allegations, which were consistent from the time he first made them to his testimony at trial, and the allegations of sexual abuse were made days or a week after his father grounded him.

Appellant first argues that the court erred in finding that appellant had effective assistance of counsel. To demonstrate ineffective assistance of counsel, a defendant must show that his attorney's performance fell below an objective standard of reasonable representation, and that he was prejudiced by such performance. *Strickland v. Washington, supra*; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. To demonstrate prejudice, the defendant must show that but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different. *Id.* In the instant case, the court did not err in finding that appellant did not demonstrate prejudice from the failure to call the witnesses who testified at the evidentiary hearing. Stacy Bailey and Terry Philpot, both relatives of appellant and Jerry Ray, testified that Jerry Ray had never told them that his father had been sexually

abusing him. However, Terry Philpot admitted that she was not close to Jerry Ray, and was not likely to confide in her, and Stacy Bailey did not testify that Jerry Ray regularly confided her. Sheree Davidson testified concerning the family dynamics following the allegations made by Jerry Ray, but provided no direct testimony concerning motive to fabricate, or recantation of the allegations. Shawn, Christopher, and Leslie Francis all testified concerning motive to lie, but none of them testified that he admitted that he had lied about the 1997 allegation made against his father. While Leslie testified her son later told her he lied concerning the 1994 allegations, she did not testify that he told her he had lied about the 1997 allegations. Danielle and Richard Rings both testified that after being grounded for his relationship with April, appellant threatened to get back at his dad, no matter what he had to do. However, they did not testify that he ever recanted the allegations of sexual abuse against appellant. The court did not err in finding this testimony did not demonstrate a reasonable probability of a change in the outcome of the trial. While the witnesses demonstrated that appellant had a motive to fabricate, and had stated that he would get even with his father, none of them testified that appellant ever recanted the allegations. Further, his statements that he would get even with his dad are susceptible to more than one interpretation: he could get even with his dad by making up the allegations, or by reporting acts of sexual abuse which actually did occur. The only direct testimony of recantation was provided by Jamie Morris. The court specifically found her testimony to not be credible, as she had difficulty recalling or remembering the matters to which she was testifying. The court sits as the judge of credibility of witnesses, and his conclusion is supported by the record. When questioned concerning to whom she talked concerning the statements, and the circumstances surrounding her signing her affidavit, she repeatedly responded, "I don't remember." Tr. 91-98. Further, she was unable to recall whether Jerry Ray told her that his allegations were a lie in 1994, or 1997. Her affidavit attached to the motion for post-conviction relief specifically refers to the summer of 1994. The court did not err in concluding that the failure to present Jamie's testimony did not rise to the level of ineffective assistance of counsel. The first assignment of error is overruled.

II

Appellant argues that the court erred in excluding the expert testimony of Donald Schumacher. The court excluded the testimony of Mr. Schumacher on the basis of relevance. The court concluded that because the remand was limited to the issue of the admissibility

of the testimony of witnesses pursuant to Evid. R. 613, the issue of ineffective assistance of counsel was not before the court. We disagree. Although the case was remanded for an evidentiary hearing to develop testimony regarding motive to fabricate, the underlying claim was one of ineffective assistance of counsel for failure to call witnesses on appellant's behalf at trial. In fact, in its findings of fact and conclusions of law, the court addressed the issue as one of ineffective assistance of counsel. Therefore, the court erred in concluding that the evidence was not relevant, and it was error to exclude the testimony of Donald Schumacher. However, the court did allow an extensive proffer of the testimony of Mr. Schumacher, which the court heard and made part of the record. Therefore, on remand, the court is instructed to consider the expert testimony of Donald Schumacher, and determine if pursuant to the standard of ineffective assistance of counsel as set forth in *Strickland v. Washington, supra,* the second prong of the test is satisfied, in light of the testimony of Mr. Schumacher. The second assignment of error is sustained.

This cause is reversed and remanded to the Guernsey County Common Pleas Court with instructions to review and consider the expert testimony of Donald Schumacher.

Exhibit P to *Return of Writ*. After the trial court conducted a second evidentiary hearing, the trial court again dismissed the petition.  The state appellate court affirmed the dismissal of petitioner's petition for post conviction relief as follows:

On December 21, 1998, appellant filed a Petition for Post-Conviction Relief, asserting trial counsel was ineffective. The petition included thirteen affidavits from family members, friends, and employers, each averring he/she had information relevant to appellant's case, but they were never called to testify. Via Entry filed June 4, 1999, the trial court denied appellant's petition without an evidentiary hearing.

Appellant filed a timely notice of appeal to this Court. This Court reviewed the affidavits attached to appellant's petition in light of the trial testimony. The affidavits focused on three issues: appellant's character; the victim's character and sexual behavior; and the victim's motive for fabricating the accusations. This Court found the trial court did not err in finding trial counsel was not ineffective for failing to present evidence of appellant's character and the victim's character, but concluded the trial court should have conducted a hearing to

38

develop the "direct testimony" of retaliation and to qualify such testimony under Evid. R. 613(B). This Court reversed and remanded the matter to the trial court for a hearing with the limited purpose of review pursuant to Evid. R. 613(B). *State v. Francis* (Feb. 23, 2000), Guernsey 5th App. No. 98CA24. (*Francis I* ).

Upon remand, the trial court conducted a hearing at which nine of the thirteen witnesses, who submitted affidavits, testified. Appellant attempted to present the testimony of Attorney Donald Schumacher as an expert witness. Although the trial court excluded the testimony, appellant was allowed to proffer the testimony into the record. The trial court found appellant had produced evidence of prior inconsistent statements of the victim which could have been offered at trial to impeach his testimony pursuant to Evid. R. 613, but concluded the evidence did not meet the ineffective assistance of counsel standard. The trial court, therefore, denied appellant's petition for post-conviction relief.

Appellant again appealed to this Court, raising two assignments of error. First, appellant argued the trial court erred in finding trial counsel was not ineffective. Second, appellant asserted the trial court erred in failing to admit the testimony of Attorney Schumacher. This Court overruled appellant's first assignment of error. We sustained his second assignment of error, and reversed and remanded for the trial court to review and consider the expert testimony of Attorney Schumacher. *State v. Francis,* Guernsey 5th App. No. 01CA05, *2002-Ohio-990.* (*Francis II* ). Upon remand the trial court concluded, even in light of Schumacher's testimony, appellant was not deprived his right to effective assistance of counsel. The trial court memorialized its ruling via Entry filed May 15, 2002. It is from this judgment entry appellant appeals, raising the following as his sole assignment of error:

"I. THE TRIAL COURT ERRED IN FINDING THAT MR. FRANCIS WAS NOT PREJUDICED BY TRIAL COUNSEL'S DEFICIENT PERFORMANCE."

I.

Herein, appellant challenges the trial court's finding he was not prejudiced by trial counsel's deficient performance.

In reviewing the trial court's denial of appellant's petition for postconviction relief, absent a showing of abuse of discretion, we will not overrule the trial court's finding if it is supported by competent

39

and credible evidence. *State v. Delgado* (May 14, 1998), Cuyahoga App. No. 72288, unreported, citing *State v. Mitchell* (1988), 53 Ohio App.3d 117, 559 N.E.2d 1370. An abuse of discretion connotes more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

Pursuant to this Court's Opinion in *Francis, II,* the trial court was instructed "to consider the expert testimony of Donald Schumacher, and determine if pursuant to the standard of ineffective assistance of counsel as set forth in *Strickland v. Washington,* * * * the second prong of the test is satisfied, in light of the testimony of Mr. Schumacher." *Id.* at 8-9, 450 N.E.2d 1140.

At the January 6, 2001 hearing held pursuant to this Court's decision in *Francis I,* appellant proffered Attorney Schumacher's testimony:

"Attorney Hohmann (appellant's counsel): Q. Mr. Schumacher, based on your review of this case and based on your expertise and knowledge do you have an opinion based upon a legal degree of certainty whether this representation in Mr. Francis' case constitutes ineffective assistance of counsel as you have defined that?

"Attorney Schumacher: A. I do. * * *

"Q. What is your opinion?

" * * *

"A. My opinion is that the failure to call certain witnesses which appear to have been both known and available to the attorney, to the trial attorney, at the time I believe did amount to an ineffective assistance of counsel under the standards set out in *Strickland versus Washington* and subsequent Ohio cases.

"Q. What are your reasons for that opinion?

"A. Well, I would like first of all to make it clear that I have confined this opinion to the stated issue of motive to fabricate under the Court of Appeals' decision to frame that.

" * * *

"Given the status of the other evidence in this case it became clear that the alleged victim in this case testimony was very crucial to the

State of Ohio in making their case, as it often is. It also became clear that where there was actual evidence available to indicate that this alleged victim, the prosecuting witness if I may refer to him that way, made actual recantations of his prior statement and where in addition to a recantation he also indicated to various individuals that he had a reason to lie about these various matters. That is the stated motive throughout the trial or at least throughout the affidavits and I think at least initially developed in the trial that he was going to get back at his father; that to not present that evidence so that it, if you will, saw the light of day in the courtroom and was subject to the examination in the context of the trial I believe that was certainly deficient on the part of the attorney.

"I also feel that given the especially the testimony of Miss Jamie Morris about the recantation that's a very very powerful matter and while, of course, all witnesses are subject to review by the trier of fact for its veracity and truthfulness I think to not bring it forward is certainly remiss on the part of the attorney. And I feel that had that been presented along with the supporting testimony of the other individuals I feel there is-- there's a very strong probability of a difference--the result in this case would have been different. I would note it appears from the information I have that while several other people mentioned in the post conviction petition have relationships to the Francis family members or whatever I don't believe Miss Morris was a family member and that also aided my decision." Tr. January 6, 2001, Proceedings at 28-32.

In its May 15, 2002 Entry, the trial court found:

"Atty. Donald Schumacher 'predicated his opinion on the affidavit of Jamie Morris, who he testified should be given greater credibility than a family member who was otherwise emotionally involved in the case.' * * * The Court further finds that 'Jamie Morris testified that she lived in the trailer occupied by the Francis family in 1994, along with her mother and her siblings.' * * * The Court further finds that Jamie Morris' credibility was 'weakened by her inability to recall or remember the matters to which she was testifying and [her referral] to Jerry Francis, the Defendant, as "Uncle Jerry" thereby undercutting the factual foundation for the proffered expert testimony of Donald Schumacher that she should be viewed as a non-family member. She apparently views the Defendant as an uncle.' * * *

" * * * all of the witnesses sought to be called by the Defendant and considered by Atty. Schumacher could both have hurt and helped the Defendant.

41

"The Court finds that Defendant's trial attorney, Mark Riddle, did cross-examine all of the State's witnesses including questioning the victim, Jerry Ray, regarding the issues raised by Defendant's proposed witnesses.

"The Court finds that a review of the record in the instant case demonstrates that the persuasive weight of the medical evidence can not be overcome by the Defendant as such medical evidence substantiates the claims testified to by the victim, Jerry Ray.

" * * *

"The Court finds that the victim never recanted the allegations which remained consistent from the time of his initial disclosure at school until the time of his trial testimony.

"Based upon the foregoing, the Court concludes that the consideration of Atty. Schumacher's expert testimony would not present a sufficient legal basis for the post conviction relief sought by the Defendant as the Defendant has failed to demonstrate that but for trial counsel's errors, the results of the trial would have been different pursuant to *Strickland, supra*, and *State v.. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373." May 15, 2002 Entry at 1-3.

In the instant matter, the trial court was the trier of fact. The trial court heard all the testimony of the witnesses. The trial court found, as this Court found, trial counsel's failure to call the witnesses who testified at the January 6, 2001 evidentiary hearing did not prejudice appellant. Despite Attorney Schumacher's opinion to the contrary, the determination appellant was not prejudiced was solely a call for the trial court. The record contains competent and credible evidence to support the trial court's determination. We find the trial court did not abuse its discretion.

Appellant's sole assignment of error is overruled.

The judgment of the Guernsey County Court of Common Pleas is affirmed.

Exhibit T to *Return of Writ*. Again, the factual findings and decision of the state appellate court are

entitled to a presumption of correctness pursuant to 28 U.S.C. §2254(d), (e), and petitioner simply

has failed to establish that the state court's findings are so unreasonable as to justify federal habeas corpus relief.

Petitioner argues that his attorney's failure to call defense witnesses could not have been based upon reasonable defense strategy. This Court does not agree. Upon review of the entire record, this Court agrees with the conclusion of the state court, *i.e.,* that testimony of the witnesses referred to would have arguably assisted the prosecution.  With the exception of Jamie Morris, all of these witnesses said that Jerry Ray had never recanted his accusations against petitioner, and thus would have bolstered the victim's credibility.[3]  Exhibit O to Return of Writ. [4] Additionally, according to

---

[3]  The mother said that her son recanted in 1994, but not in 1997; however, the trial court discounted such testimony.  *See* Exhibit O to Return of Writ, n.4, *infra*.  According to the mother, when petitioner told her in 1997 that his father was sexually abusing him, she told him that she "would keep an eye on things." *Transcript, Evidentiary Hearing*, January 6, 2001, at 44-45.  The next day, Jerry Ray sent his brother, Christopher, to tell his mother to "forget it." *Id*., at 45.  Approximately one week later, Jerry Ray reported the sexual abuse to the school principal.  *Id.*, at 46.

[4]  The trial court made the following relevant findings:

Leslie Francis, the mother of the victim and wife of the Defendant, testified that in 1994 her son alleged that his dad had been messing with him after being punished for swimming in his underwear with his cousin, Crystal.  The son... later told her that he had lied....

[T]he mother does not believe her son as to the 1997 allegations of sexual abuse by the father and feels that her son is lying to get back at his father for being grounded after having been seen coming out of a trailer with his girlfriend, April Wamsley.

... Jerry Ray Francis III, did not report the allegations of sexual abuse by his father to the principal at the Junior High School immediately after being grounded.  The report to the Junior High School principal was made several days to a week later.

The Court further finds that Jerry Ray Francis III has never told his mother that he has lied about the allegations of sexual abuse which he made against his father.

Laura Harris, Jerry Ray's brothers, Shawn and Christopher, knew that petitioner had been sexually abusing their brother; they confirmed Jerry Ray's allegations against petitioner. *Transcript*, at 93-94. Richard Rings, one of petitioner's proposed defense witnesses, had two prior convictions for corruption of a minor, one of the victims being April Wamsley, Jerry Ray's former girlfriend.  *See* Exhibit O to Return of Writ.  Additionally, although the mother did not believe her son and would have testified that Jerry Ray had recanted his sexual abuse allegations in 1994, she too would have been subject to cross examination regarding her son's disclosures of sexual abuse, the presence of

---

Richard Rings... testified that he has never has heard Jerry Ray Francis III... say that he has lied about the allegations of sexual abuse made against his father.

\*\*\*

Jamie Morris testified that Jerry Ray Francis III had told her that all he had said about his father was "just a lie".  She was unable to recall when Jerry Ray Francis III had told her this either in 1994 or 1997 and her affidavit attached to the Motion for Postconviction Relief refers to the Summer of 1994.  The Court finds that the testimony of Jamie Morris is weakened by her inability to recall or remember the matters to which she was testifying and she refers to Jerry Francis, the Defendant, as "Uncle Jerry"....

Shawn Francis... testified that his brother had never told him that he had lied about what his father had done to him and has never changed his mind about what he said that his father did to him.

Christopher Francis testified that his brother... had never said that he was lying about his father's sexual abuse and had never changed his mind and has always maintained his father had sexual contact/conduct with him.

pornographic videotapes in the home, the placement of Jerry Ray and his brothers in foster care, and her failure to visit Jerry Ray since he had been placed in foster care.[5]

Even assuming *arguendo*, however, that trial counsel's failure to call defense witnesses constituted the ineffective assistance of counsel under *Strickland,* petitioner cannot establish prejudice.

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Cf. United States v. Morrison*, 449 U.S. 361, 364-365, 101 S.Ct. 665, 667- 668, 66 L.Ed.2d 564 (1981).

*Strickland v. Washington, supra*, 466 U.S. at 691.

> Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.
>
> It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.

*Id.*, at 693.

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.*, at 694.

-----

[5] Jerry Ray said that his father had forced him to watch pornographic videotapes while he was raped. Jerry Ray also said that petitioner would find an excuse to ground him if Ray refused to have sex with him.  Petitioner would make Jerry Ray stay in his room for one to two weeks. *Transcript*, at 144, 149-151. Harris said that the mother had visited Jerry Ray infrequently since he had been placed in foster care. *Id.*, at 105. Jerry Ray testified that his mother had not treated him very well since he had reported the sexual abuse. *Id.*, at 182.  He had been in eleven foster care placements, and had apparently been suicidal.  *Id.*, at 104, 176

45

> [A] verdict or conclusion only weakly supported by the record is
> more likely to have been affected by errors than one with
> overwhelming record support.

*Id.*, at 696.

Petitioner contends that he was prejudiced by his counsel's failure to present evidence that Jerry Ray wanted to get back at his father for grounding him, particularly because Jerry Ray had recanted in 1994, and told his mother to "forget it" in 1997. This Court does not agree. On cross examination, Jerry Ray admitted that he was angry about being grounded, that he had a hard time accepting discipline, and that he had lied to avoid punishment. *Transcript,* at 190, 194-96. Further, the mother did not believe her son's accusations, and none of the proposed witnesses could have refuted the strong physical evidence of sexual abuse. All witnesses, with the exception of Jamie Morris, would have testified that petitioner had never recanted the charges at issue in this case. Further, the trial court specifically found Morris' testimony to be unworthy of credit. This finding is entitled to a presumption of correctness, and petitioner has failed to provide any reasonable basis to rebut this finding here. *See* 28 U.S.C. §2254(e). Finally, as noted by the state appellate court, testimony that Jerry Ray wanted to get back at his father for punishing him simply does not discredit Jerry Ray's accusations of sexual abuse, particularly when viewed in light of strong physical evidence corroborating the fact that Jerry Ray had been raped.

For all of the foregoing reasons, claim four is without merit.

## V.  CLAIM FIVE

In claim five, petitioner asserts that there is constitutionally insufficient evidence to sustain petitioner's convictions of rape, as alleged in counts three and four of the indictment because,

according to the Bill of Particulars, these acts occurred between November 1, 1996, and February 20, 1997, and the victim, Jerry Ray, who was born October 31, 1982, stated that the last attempted anal penetration by petitioner occurred when Ray was eleven or twelve years old. Therefore, according to the victim, the last episode of sexual abuse by petitioner must have taken place in 1995. The state appellate court made the following findings regarding this claim:

> Appellant's fifth assignment of error questions whether convictions of rape embodied in counts three and four of the indictment were against the manifest weight of the evidence and based on insufficient evidence. Appellant focuses on the bill of particulars filed by the State on July 10, 1997. The bill of particulars stated that the acts of rape, charged in counts three and four of the indictment, "were accomplished by the defendant, Jerry Francis, Jr., placing his erect penis into the anal cavity of his son [the victim] a male child ... on dates certain between *November 1, 1996, and February 20, 1997.*"
>
> [FN4] (Emphasis added.)
>
> FN4. The victim turned 14 on October 31, 1996.
>
> On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492....
>
> Under counts three and four of the indictment, defendant was charged with engaging in "sexual conduct with [the victim] not the spouse of the said Jerry R. Francis, Jr., and the said Jerry R. Francis, Jr. purposely compelling [the victim] to submit by force or threat of force, in violation of O.R.C. Section 2907.02 entitled 'Rape' ". Sexual conduct is defined to include anal intercourse between persons, regardless of sex. R.C. 2907.01(A).
>
> Dr. Boca testified to what the victim told Dr. Boca during the history gathering part of Dr. Boca's interview with the victim on February 20, 1997. Dr. Boca testified that the victim "... also stated his father had placed his penis into his son's rectum usually once or twice a month ... [the victim] reported he had some lose [sic] stools and been sore inside his rectum especially for the last couple weeks and he had felt a lump inside." 1 T.R. at 27. Dr. Boca found bruising inside the rectal area that was between five days old and three months old.

(November 1, 1996, was nearly four months prior to the exam on February 20, 1997.) Dr. Boca indicated the bruising was consistent with an outside object going inside the anal sphincter but inconsistent with something coming from internally to the outside from the child. 1 T.R. at 33. Dr. Boca also indicated it would be difficult for that bruising to be created by someone's finger. 1 T.R. at 54. Dr. Boca also found that the victim had an inflamed prostate which usually occurs only with repeated significant force to the prostate. [FN5] 1 T.R. at 34 and 1 T.R. at 58. Dr. Boca also said that the object entering the child's anus would probably be longer than a finger based on the location of the prostate. 1 T.R. at 46 and 1 T.R. at 59. Dr. Boca found the victim's sphincter muscle to be "looser than I would expect from a child or a young adult." 1 T.R. at 30. Dr. Boca found the child's physical condition consistent with having been repeatedly anally penetrated by something wider than a finger. 1 T.R. at 35--39.

FN5. A bacterial infection of the prostate was ruled out by other medical tests.

There was sufficient, competent, credible evidence from Dr. Boca's testimony alone to conclude that at least two instances of rape occurred between November 1, 1996, and February 19, 1997. [FN6] We find this evidence to be sufficient, competent and credible to establish proof beyond a reasonable doubt that anal intercourse occurred between November 1, 1996, and February 20, 1997, though the child victim testified that no anal intercourse occurred after the child was "about 11 or 12". 1T.R. 200. Therefore, we find that appellant's convictions on counts three and four of the indictment were based on sufficient evidence and were not against the manifest weight of the evidence.

FN6. The issue of whether force was proven beyond a reasonable doubt was not the issue in this assignment of error. However, we find that force was proven based on the child's testimony on this issue as set forth in the findings of fact set forth at the beginning of this opinion.

In addition, though not necessary for our conclusion above, Cynthia King, the expert witness on the characteristics of sexually abused children, had conducted an interview of the child victim on March 10, 1997. She testified that as children get older they feel they should be able to control the situation more and maybe should have fought back. The expert stated that it was consistent with a sexually abused teenager to "give history of sexual activity that was more removed from them than more recent ones." 2 T.R. at 91. Ms. King also

48

testified that "male-to-male victimization is extremely difficult for teenage boys who are struggling with who I am. What's my sexual identity .. Does that mean I'm homosexual ..." 2 T.R. at 91. While we found that the admission of portions of Ms. King's testimony to be error in regard to the specific details of the crime, we found that her expert testimony was admissible so long as it was based upon specialized knowledge that she had, as an expert, that was outside of the common knowledge of the trier of fact. Ms. King's explanation as to why the victim would testify in detail to the earlier incidents of sexual abuse but deny the more humiliating aspects of the most recent incidents of sexual abuse are admissible under *Stowers*. Therefore, there was an expert's explanation as to why the victim would testify in detail to the earlier incidents of sexual abuse but deny the more humiliating aspects of the most recent incidents of sexual abuse.

As discussed above, we find that the convictions for rape under counts three and four of the indictment were not against the manifest weight of the evidence nor based upon insufficient evidence. We find that the specific allegations in the complaint and bill of particulars were proven beyond a reasonable doubt by sufficient competent, credible evidence.

Exhibit F to *Return of Writ*.[6] Again, these findings are entitled to a presumption of correctness under

28 U.S.C. §2254, and petitioner has failed to establish any reason to disturb the state court findings.

*See Williams v. Taylor, supra.*

Before a criminal defendant can be convicted consistent with the United States Constitution,

there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine whether the evidence was

sufficient to support a conviction, this Court must view the evidence in the light most favorable to

the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson*, at 319). The prosecution

is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting

---

[6] Petitioner does not argue in this federal habeas corpus petition that his convictions are against the manifest weight of the evidence, nor would such claim be appropriate for federal habeas corpus review. *See Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983).

*Jackson,* at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, at 326).

Petitioner does not challenge the findings of the state appellate court in regard to this claim. For the reasons discussed at length by the state appellate court, this Court likewise concludes that, when viewing all the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, the evidence is constitutionally sufficient to sustain petitioner's rape convictions.

Claim five is without merit.

## VI.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matt er to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation*

*de novo*, and also operates as a waiver of the right to appeal the decision of the District Court

adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States*

*v. Walters*, 638 F.2d 947 (6th Cir. 1981).


August 3, 2005                                        *s/Norah McCann King*
                                                     Norah McCann King
                                                     United States Magistrate Judge